UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMARA LEE WOOD,

             Plaintiff,

v.                                          Case No:  2:15-cv-437-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

REPORT AND RECOMMENDATION[1]

Plaintiff Tamara Lee Wood appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB").  For the reasons discussed herein, it is recommended that the decision of the Commissioner be reversed and this matter be remanded pursuant to 42 U.S.C. § 405(g), sentence four.

I.      Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") finding is supported by

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

substantial evidence; (2) whether the ALJ properly analyzed Plaintiff's credibility; and (3) whether the step five determination is supported by substantial evidence.

## II.    Procedural History and Summary of the ALJ's Decision

Plaintiff filed a protective application for DIB on September 24, 2013, alleging a disability that began on February 10, 2011.   Tr. 118-20.   The Social Security Administration denied her claim initially on January 18, 2013.   Tr. 66-69.   Plaintiff requested and received a hearing before ALJ JoErin O'Leary, on September 30, 2013, during which she was represented by an attorney.   Tr. 25-49.   Plaintiff and a vocational expert ("VE") testified at the hearing.   *Id.*   The ALJ issued an unfavorable decision on November 7, 2013.   Tr. 10-20.

The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.   Tr. 12.   At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time after the alleged onset date.   *Id.*   At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, dumping syndrome, and depression.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   *Id.*

Taking into account the effects from all of the Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to perform sedentary work,[3] as defined in 20

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary

C.F.R § 404.1567(a) with certain limitations.   Tr. 14.   Specifically, the ALJ found that

> [Plaintiff] can only occasionally climb stairs.   She may never climb ladders and scaffolds.   The [Plaintiff] may occasionally balance, stoop, kneel, crouch and crawl.   She must avoid all unprotected heights, moving mechanical parts, and occupational vibrations.   The [Plaintiff] is limited to performing simple, routine, and repetitive tasks.   She should not be required to work with the general public.   The [Plaintiff] requires a work environment with ready access to restroom facilities.

*Id.*   The ALJ found that Plaintiff is unable to perform any of her past relevant work as a social worker, but there are jobs existing in significant numbers in the national economy that Plaintiff can perform.   Tr. 19.   Thus, the ALJ found Plaintiff was not disabled and denied her claim.   Tr. 20.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on March 15, 2015.   Tr. 1.   Accordingly, the November 7, 2013 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on May 18, 2015.   Doc. 1.

### III.   Social Security Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.    42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step

---

job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520;

416.920.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20

C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631

F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion

through step four; and, at step five, the burden shifts to the Commissioner. *Id.*;

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The Eleventh Circuit has noted that

the Commissioner's burden at step five is temporary, because "[i]f the Commissioner

presents evidence that other work exists in significant numbers in the national

economy, 'to be considered disabled, the claimant must then prove that he is unable

to perform the jobs that the Commissioner lists.'" *Atha*, 616 F. App'x at 933 (citing

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir.2001)).   The scope of this Court's

review is limited to determining whether the ALJ applied the correct legal standards

and whether the findings are supported by substantial evidence. *McRoberts v.*

*Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S.

389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by

substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a

scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of

the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Commissioner,* 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV.   Discussion

### A. Whether the ALJ's RFC finding is supported by substantial evidence

First, Plaintiff argues that the ALJ's finding that Plaintiff can perform sedentary work with additional limitations is not supported by substantial evidence because the ALJ erred in weighing and evaluating the medical opinion evidence of record, and the RFC fails to account for the ALJ's finding of moderate limitations in concentration, persistence, and pace.   Doc. 22 at 10, 17.   The Commissioner responds that the ALJ's RFC is supported by substantial evidence because the ALJ considered the medical evidence of record, including the opinions of Plaintiff's doctors and the state agency reviewing consultants.   Doc. 23 at 3.

The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a).   When determining a claimant's RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   20 C.F.R. § 404.1545(a)(2); SSR 96-8p.   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education and work experience also are considered in determining her RFC and whether she can return to her past relevant work.   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).

The ALJ also is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of

the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).   The ALJ's RFC assessment must identify and describe the specific medical and nonmedical evidence that supports her conclusion and explain how any material inconsistencies or ambiguities in the record were considered and resolved.   SSR 96-8p.   Thus, the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

### 1.  *Weight of medical opinion evidence*

Plaintiff first contends that the when the ALJ weighed the medical opinion evidence, she did so in contravention of the treating physician rule.   Doc. 22 at 10. Specifically, Plaintiff states that the ALJ failed to provide good cause for according less than dispositive weight to Plaintiff's treating physician, Dr. Gary L. Linguar, M.D.   *Id.* at 11.   Additionally, Plaintiff states that the ALJ erred in according great weight to the opinion of state agency consultant, Dr. Dale Blum, as his opinion was "stale."   *Id.* at 16.   Finally, Plaintiff asserts that the ALJ erroneously gave only moderate weight to the opinion of the consultative examining psychologist, Dr. Lynn McAndrews.   *Id.* at 18.   The Commissioner responds that the ALJ properly explained her reasons for the weight provided to Dr. Linguar, Dr. Blum, and Dr. McAndrews.   *See* Doc. 23.

Under the Social Security regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer

detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight. SSR 96-2p; 20 C.F.R. § 404.1527(c). By contrast, if the ALJ does not afford controlling weight to a treating physician's opinion, she must clearly articulate the reasons for doing so. *Winschel*, 631 F.3d at 1179.

Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); *Hunter*, 808 F.3d at 822-23. "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). Although the regulations require

that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as she demonstrates good cause to reject the opinion. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

In the Eleventh Circuit, the law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)) (per curiam). The court reiterated in *Winschel*, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." 631 F.3d at 1179 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). An ALJ who fails to "state with at least some measure of clarity the grounds for his decision" cannot be affirmed because the court cannot perform its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational." 631 F.3d at 1179 (citations omitted).

### a. Treating Physician, Dr. Gary L. Linguar

The record shows Plaintiff first presented to family practitioner Dr. Linguar on May 27, 2010 with complaints of right arm aches and pains that were keeping her awake at night. Tr. 246. The report also indicated that Plaintiff complained that her right arm was weaker, things were difficult to pick up, vacuuming was difficult, and she experienced some tingling. *Id.* Upon examination, Dr. Linguar noted that Plaintiff was a healthy appearing individual in no distress. *Id.* Dr. Linguar also

noted that Plaintiff had decreased activity due to her arm pain.   *Id.*   He stated that Plaintiff's mood and affect were appropriate, and she was stable on Cymbalta.   *Id.* Dr. Linguar gave Plaintiff a coupon for samples of Cymbalta for her depressive disorder.   *Id.*   He also discussed home treatment and exercises, pathophysiology, steroid shots and a splint for her arm pain.   *Id.*

Plaintiff's next visit in the record to Dr. Linguar was on July 25, 2012, during which she reported that she thought she had fibromyalgia.   Tr. 247.   She stated she had chronic aches and pains.   *Id.*   Additionally, Plaintiff reported that her diarrhea was "pretty bad," had been occurring for years since her gallbladder was removal, and she had lost a lot of weight.   *Id.*   Plaintiff reported to Dr. Linguar that she tried various prescriptions such as Cymbalta, Provigil, Nortriptyline, Pristique, Sertraline, Cellexa and Prozac.   *Id.*   She also reported that she had no insurance or money to pay for an extensive work up.   *Id.*   Dr. Linguar's review of Plaintiff's systems revealed anorexia, appetite loss, fatigue, tiredness and a greater than ten-pound weight loss.   *Id.*   Plaintiff also exhibited bloating, chronic diarrhea, food intolerance, gas and getting full quickly at meals.   *Id.*   Dr. Linguar also reported that Plaintiff had joint pain and stiffness and myalgia.   *Id.*   On examination, Dr. Linguar noted that Plaintiff's mental status was alert, and she was not in acute distress.   Tr. 248. He also found that her chest and lung exam revealed normal breathing sounds, no adventitious sounds and normal vocal resonance.   *Id.*   Additionally, Plaintiff's abdomen was non-tender and soft; and she had no hernias, palpable abdominal masses, abnormal dullness to percussion or jar tenderness.   *Id.*   Plaintiff also

exhibited normal gait and station.   *Id.*   Dr. Linguar noted one trigger point in both Plaintiff's thoracic and lumbosacral spine.   *Id.*   Dr. Linguar prescribed Lyrica for Plaintiff's fibromyalgia.   *Id.*   Plaintiff declined Dr. Linguar's recommendation for a complete gastrointestinal work-up and consultation by a gastroenterologist and a rheumatologist.   *Id.*

Plaintiff next saw Dr. Linguar on December 18, 2012, for a disability evaluation.   Tr. 301.   Plaintiff presented with fibromyalgia with symptoms including "widespread pain, diffuse tenderness, generalized fatigue, arthralgia, joint stiffness, morning stiffness, sleep disturbance, restless legs and exercise intolerance." *Id.*   Dr. Linguar stated that Plaintiff described her pain as dull, aching and throbbing, and her symptoms were worsening.   *Id.*   Dr. Linguar noted that Plaintiff had been compliant with her treatment.   *Id.*   Additionally, he stated that the Lyrica helped with Plaintiff's pain, but it made her dizzy and tired.   *Id.*   Dr. Linguar noted that Plaintiff was unable to work and was having difficulties with activities of daily living.   *Id.*   Plaintiff also reported to Dr. Linguar that the diarrhea had been occurring for years, and her stools were watery.   *Id.*

On examination, Dr. Linguar found that Plaintiff was fatigued and tired.   *Id.* Plaintiff also exhibited back pain, decreased range of motion, joint pain, joint stiffness, swelling, knee pain, muscle cramps, muscle pain, muscle weakness, myalgia and "physical disability."   Tr. 301.   As to the physical disability finding, Dr. Linguar noted that Plaintiff had been unable to work for a long time and was filing for disability.   *Id.*   Dr. Linguar also found that Plaintiff was stressed due to her medical

issues.   *Id.*   Dr. Linguar opined that Plaintiff was alert and lean, had no skin rashes, and had normal breathing sounds and normal heart sounds with regular rate and rhythm.   Tr. 302.   Examination of Plaintiff's abdomen revealed a direct right inguinal hernia.   *Id.*   Plaintiff also exhibited multiple trigger points, and her gait and station were painful.   *Id.*   Dr. Linguar opined that Plaintiff was disabled and could not work.   *Id.*   Later, on January 2, 2013, Dr. Linguar made a notation that Plaintiff's borderline anemia and elevated Sed rate[4] "might" be something other than fibromyalgia, and he suggested that Plaintiff consult a rheumatologist.   Tr. 300.

On February 18, 2013, Dr. Linguar completed both a Fibromyalgia Medical Source Statement and a Medical Source Statement of Ability to do Work-Related Activities.   Tr. 311-20.   In the Fibromyalgia Medical Source Statement, Dr. Linguar opined that Plaintiff has more than twelve trigger points, including allodynia— hypersensitivity to touch, fatigue, chronic widespread pain, sleep disturbance, muscle weakness, joint stiffness, muscle spasms, morning stiffness, premenstrual syndrome, irritable bowel syndrome, cognitive dysfunction, numbness and tingling, neuropathy, Raynaud's phenomenon,[5] dizziness, multiple chemical sensitivity, chronic fatigue syndrome, myofascial pain syndrome, GERD, anxiety, depression, and dumping syndrome (noting that she has diarrhea ten or more times per day).   Tr. 311.   Dr.

---

[4] The Sed rate is "a blood test that can reveal inflammatory activity in your body." http://www.mayoclinic.org/tests-procedures/sed-rate/home/ovc-20207006

[5] "Raynaud's (ray-NOHZ) disease causes some areas of your body – such as your fingers and toes – to feel numb and cold in response to cold temperatures or stress." http://www.mayoclinic.org/diseases-conditions/raynauds-disease/basics/definition/con-20022916

Linguar stated that these symptoms and impairments have lasted at least the prior twelve months.   *Id.*   Dr. Linguar also noted that Plaintiff had been prescribed Lyrica, but that had caused dizziness and confusion.   Tr. 312.   As a result of Plaintiff's impairments, Dr. Linguar found that Plaintiff can walk only one city block without rest or severe pain; can sit for one hour at a time before needing to get up; can stand for fifteen minutes before needing to sit down or walk around; can sit or stand/walk for a total of less than two hours in an eight-hour workday; needs to take naps during the workday; can walk for five to ten minutes every twenty minutes; needs unscheduled breaks every hour and rest for fifteen to twenty minutes before returning to work; can lift less than ten pounds occasionally; can rarely to never twist, crouch or squat; can rarely stoop/bend, climb ladders or stairs; and can never look down, turn head right or left, look up or hold head in a static position.   Tr. 313.   Dr. Linguar further opined that Plaintiff would have significant limitations with reaching, handling or fingering.   Tr. 314.   He also stated that Plaintiff would be off task twenty-five percent or more of the work day.   *Id.*   He further opined that Plaintiff is incapable of handling even "low stress" work.   *Id.*   Moreover, Dr. Linguar stated that Plaintiff would have good, bad and "ok" days; and, on average, Plaintiff would be absent from work more than four days per month.   *Id.*   He noted that her prognosis was "poor/fair."   Tr. 311.

Dr. Linguar also completed a Medical Source Statement of Ability to do Work-Related Activities.   Tr. 315-20.   In this report, Dr. Linguar opined that Plaintiff can lift or carry up to ten pounds occasionally, but never lift or carry more than ten

pounds; sit one hour at a time without interruption; stand or walk fifteen minutes without interruption; sit a total of two hours in an eight-hour workday; stand or walk a total of one hour in an eight-hour workday; never reach, push or pull with her left or right hand; occasionally handle, finger or feel with her left and right hands; occasionally operate foot controls with her right foot but never her left foot; occasionally climb stairs and ramps, stoop or kneel; never climb ladders or scaffolds, balance, crouch or crawl; occasionally operate a vehicle; occasionally tolerate exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, and vibrations; and never tolerate exposure to unprotected heights, moving mechanical parts, extreme heat or cold.   Tr. 315-19.   Additionally, Dr. Linguar opined that Plaintiff cannot do activities such as shopping or walking a block at a reasonable pace on uneven surfaces.   Tr. 320.   Dr. Linguar stated that Plaintiff has severe dumping syndrome and diarrhea and needs to be near a bathroom more than ten plus times per day.   Tr. 320.

The ALJ discussed Dr. Linguar's records related to Plaintiff's fibromyalgia, diffuse tenderness, stiffness and sleep disturbance.   Tr. 15.   She also discussed the trigger points in Plaintiff's spine, and that Plaintiff experiences hypersensitivity to touch, chronic pain, muscle weakness and spasms, premenstrual syndrome, irritable bowel syndrome, cognitive dysfunction, and numbness and tingling.   *Id.*   Moreover, the ALJ noted that Plaintiff experiences neuropathy, Raynaud's phenomenon, dizziness, multiple chemical sensitivity, chronic fatigue syndrome, myofascial pain syndrome, GERD, anxiety and depression.   *Id.*   The ALJ also considered Dr.

Linguar's opinions in the Fibromyalgia Medical Source Statement and the Medical Source Statement of Ability to do Work-Related Activities.    Tr. 17.    The ALJ stated that she accorded the opinions in the medical source statements little weight as "[they were] not consistent with [Dr. Linguar's] relatively benign treatment records."    Tr. 17.

Plaintiff argues that the ALJ's finding is in error because the treatment records show disabling limitations, and Dr. Linguar's opinions are wholly consistent with his treatment records.    Doc. 22 at 14.    Plaintiff alleges that the ALJ ignored the records of Plaintiff's complaints of pain, fatigue, diarrhea and resulting weight loss.    *Id.* Additionally, Plaintiff contends that the ALJ ignored Dr. Linguar's findings of multiple trigger points of the thoracic and lumbosacral spine.    *Id.*    Plaintiff asserts that "[b]ecause the impairments to which he opined, and the associated inherent limitations, were clearly noted in Dr. Linguar's treatment records, the ALJ erred in discounting his opinion for said reason."    *Id.*    Additionally, Plaintiff asserts that the ALJ failed to discuss the additional limitations and discussed only the exertional limitations that were contained in Dr. Linguar's medical source statement.    *Id.* at 15.

Plaintiff also asserts that Dr. Linguar's opinions were "wrongfully discounted" (and, arguably, the ALJ lacked good cause to reject them) because they are supported by the other evidence of record.    Doc. 22 at 15.    Plaintiff discusses her visit on January 7, 2011 to Dr. David B. MacDougall, M.D., in which she reported that she was suffering from frequent loose stools and that she moved her bowels as often as

ten or twenty times per day.  *Id.* at 15-16; Tr. 252.  Dr. MacDougall diagnosed Plaintiff with postcholecystectomy diarrhea, but also noted that on examination, Plaintiff's abdomen was soft and non-tender, and her bowel sounds were normal.  Tr. 252.  Dr. MacDougall also found that Plaintiff had no unintentional change in weight, no emotional liability or depression, and no specific joint or muscle complaints.  *Id.*  Dr. MacDougall recommended that Plaintiff consult a gastroenterologist to both rule out other possible causes of her frequent loose stools and to see if the gastroenterologist had any suggestions for therapy Plaintiff had not tried.  *Id.*  Dr. MacDougall also recommended that Plaintiff discontinue smoking. *Id.*

Plaintiff also references a November 17, 2011 visit to Dr. Charles H. Lange, DC.  Doc. 22 at 16; Tr. 261.  Dr. Lange performed orthopedic tests and found that Plaintiff had weakness of the right and left tensor fascia lata muscles; weakness in the group arm test with axial compression of cervical spine on the left; weakness in the group muscle test with axial compression cephalic on the left; and multiple vertebral subluxations in the cervical, thoracic, lumbar and sacroiliac regions.  Tr. 261.  Plaintiff also reported to Dr. Lange that she was in chronic pain, but her symptoms were relieved with medication.  Tr. 260.  She also indicated that she exercised seven times per week.  *Id.*  Dr. Lange also reported that Plaintiff's head tilt and gait were normal, and her motor strengths were five bilaterally in all areas, including trapezius, deltoids, biceps, triceps, wrist flexion/extension, quadriceps, hamstrings, abductors, adductors, dorsiflexors, and plantarflexors.  Tr. 261.  Dr.

Lange made similar findings during Plaintiff's November 22, 2011 visit.   Tr. 263-64. Later, on November 29, 2011, December 13, 2011, and January 31, 2012, Plaintiff reported to Dr. Lange that although she was feeling better, she still was experiencing chronic pain.   Tr. 266-71, 278-80.

Plaintiff also discusses the findings of Dr. Michael J. Simpson's January 5, 2013 examination, which indicated that she had multiple anthralgias and myalgias. Doc. 22 at 16; Tr. 325.   Dr. Simpson found that Plaintiff had multiple trigger points in the upper extremities.   Tr. 325.   Dr. Simpson also noted, however, that other lower extremity joints did not elicit tenderness, and therefore did not appear to be evidence of nerve root impingement from the lumbar spine.   *Id.*   Additionally, Dr. Simpson stated that Plaintiff was known to walk normally and did not appear to have significant difficulty with orthopedic maneuvers.   *Id.*   Dr. Simpson also found that Plaintiff was able to pick up a coin, button clothing and open a door with either hand. *Id.*   Moreover, although Plaintiff reported a history of abdominal discomfort and loose stools, Dr. Simpson found the abdominal exam to be benign at that time.   Tr. 326.   There were no signs of tenderness, and Plaintiff reported a stable weight over the last year.   *Id.*

The Commissioner notes that the ALJ's assigning of little weight to Dr. Linguar's medical source opinions was proper because Dr. Linguar's medical source opinions were not supported by his own relatively benign treatment records.   Doc. 23 at 1.   The Commissioner argues Dr. Linguar's July 25, 2012 records revealed that Plaintiff had no abdominal issues, normal gait and station, and one positive trigger

point of the thoracic spine and one positive trigger point of the lumbosacral spine. *Id.* The Commissioner also notes that Dr. Linguar's opinions contained internal inconsistencies. *Id.* at 10. For example, the Commissioner asserts that

> [w]hile Dr. Linguar checked a box indicating that Plaintiff must walk every 20 minutes and five to ten minutes each time, he did not check a box indicating Plaintiff needed to include periods of walking around during an eight-hour working day (Tr. 313). Dr. Linguar checked boxes indicating Plaintiff could both never and rarely twist or crouch/squat (Tr. 313). Dr. Linguar opined on one form that Plaintiff could rarely climb ladders (Tr. 313), but opined she could never climb ladders on another form (Tr. 318). Dr. Linguar also inconsistently opined Plaintiff could reach in front in front of her body and reach overhead bilaterally 25% of the time during an eight-hour workday (Tr. 314), but also opined she could never reach overhead or never perform all other reaching activities (Tr. 317).

*Id.* Additionally, the Commissioner asserts that Dr. Linguar's opinion that Plaintiff is disabled and cannot work is an issue that is reserved for the Commissioner. *Id.* The Commissioner also asserts that Dr. Linguar's opinions were inconsistent with the other evidence of record. *Id.* at 8.

The Commissioner also references the January 5, 2013 findings of Dr. Simpson, which as noted, *supra*, revealed many normal findings. Doc. 23 at 8. Additionally, the Commissioner compared Dr. Linguar's findings to those of an examination of Plaintiff by a nurse practitioner on May 1, 2013, the latter of which revealed that Plaintiff's abdomen and extremities were normal, her musculoskeletal joints showed no synovitis, and Plaintiff had normal range of motion throughout. *Id.* at 9, Tr. 343. Moreover, the Commissioner refers to a June 24, 2013 examination by a physician's assistant indicating that Plaintiff reported that she was doing "ok" with her ulcerative colitis, and that it was "better." *Id.*, Tr. 345. The Commissioner

asserts that these reports showed that "Plaintiff was doing quite well with little abnormalities or noted limitations, findings that are markedly inconsistent with the significant limitations Dr. Linguar opined." *Id.* at 10.

As discussed, *supra*, the ALJ must assign a treating physician's opinion controlling or dispositive weight, unless good cause is shown. *Castle*, 557 F. App'x at 854 (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo*, 955 F. Supp. at 1462; *Hunter*, 808 F.3d at 822-23. The court will not second guess the weight the ALJ assigned to a treating physician as long as the ALJ articulates specific justification for doing so. *Hunter*, 808 F.3d at 823.

In this case, however, the ALJ simply opined that that little weight was given to Dr. Linguar's opinion "as it [was] not consistent with his relatively benign treatment records." Tr. 17. While internal inconsistencies are one way in which an ALJ may find good cause to discount a treating physicians opinions, the ALJ must state with some measure of clarity the grounds for the decision. *Winschel*, 631 F.3d at 1179. Here, the ALJ made a conclusory finding that makes it impossible for the Court to determine whether the decision is supported by substantial evidence. The ALJ does not indicate what treatment records were considered when he found the medical source opinions to be inconsistent with Dr. Linguar's treatment records. *See* Tr. 17. Thus, the Court is left guessing what the ALJ considered in according little weight to Dr. Linguar's opinion.

The Commissioner also argues that substantial evidence supports the ALJ's decision because Dr. Linguar's records were inconsistent with the other record

evidence.   Doc. 23 at 8.   Although inconsistency with other record evidence is
another way to establish that good cause exists to discount a treating physician's
opinion, SSR 96-2p, *Crawford*, 363 F.3d at 1159-60, the ALJ here did not cite
inconsistency with the record evidence as the reason for reducing the weight accorded
to Dr. Linguar.   *See* Tr. 17.   The only reason the ALJ articulated for her reducing
the weight she accorded to Dr. Linguar's opinions was that Dr. Linguar's findings
were inconsistent with his *own* treatment records, not those of other medical sources.
Tr. 17.   The Court is left to question whether the ALJ even considered whether Dr.
Linguar's records were consistent with the other record evidence.   *Cf. Hunter*, 808
F.3d at 823.   The Court finds that although the ALJ does not need to specifically
address every factor considered, she must articulate her opinion with sufficient
clarity and specificity for the Court to determine that the decision is rational and
supported by substantial evidence.   "The ALJ must state with particularity the
weight given to different medical opinions and the reasons therefor."   *Winschel*, 631
F.3d at 1179 (internal citation omitted).   Here, there appears to be evidence to both
bolster and refute the conclusions of Dr. Linguar, but it is not the function of the
Court to re-weigh or resolve conflicts in the evidence.   *Lacina*, 606 F. App'x at 525.
It is the function of the Commissioner.   *Id.*   Without more, the Court cannot
conclude that the ALJ met her burden of showing good cause for reducing the opinions
of Plaintiff's treating physician, Dr. Linguar.   Accordingly, the Court cannot
conclude that Plaintiff's RFC is supported by substantial evidence.

### b.  State Agency Consultant, Dr. Dale Blum

When a treating source's opinion is not given controlling weight, as in this case, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialist.  20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).  Plaintiff argues that the ALJ erred in according "great weight" to state agency consultant, Dr. Blum.  Doc. 22 at 16.  Plaintiff states that, "[a]lthough Dr. Blum reviewed the records available to him at the time, as the ALJ pointed out, he was not privy to the plethora of medical records that followed his December 2012 opinion."  *Id.* at 16-17.  The Commissioner concedes that Dr. Blum did not consider the evidence that post-dated his opinion, but asserts that those post-dated opinions were consistent with Dr. Blum's opinion.  Doc. 23 at 4 n.1.  Additionally, the Commissioner asserts that the ALJ considered all of the evidence, which was consistent with Dr. Blum's opinion that Plaintiff could perform a modified range of sedentary work.  *Id.*

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).  Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of non-examining sources by the ALJ; but the ultimate

opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta*, 194 F. App'x at 877.

Dr. Blum, a non-examining state agency consultant, opined on December 27, 2012 that Plaintiff had the capability to perform unskilled sedentary work with certain additional limitations.   Tr. 50-62.   Dr. Blum noted that, at that time, there was no objective evidence Plaintiff had been or would be unable to work for a consecutive twelve-month period.   Tr. 59.   The ALJ found that Dr. Blum's opinion was consistent with the finding of full strength and reflexes and, thus, gave great weight to his opinion.   Tr. 17.

Plaintiff relies upon cases from the Northern District of Georgia and the Eastern District of Michigan to support her argument that the ALJ erred in giving great weight to the "stale" opinion of Dr. Blum.   Doc. 22 at 17 (citing *Russell v. Comm'r of Soc. Sec.*, No., 742 F. Supp. 2d 1355, 1378 (N.D. Ga. Sept. 23, 2010); *Guido v. Comm'r of Soc. Sec.*, No. 13-cv-13520, 2014 WL 4771929 (E.D. Mich. Sept. 24, 2014)).   In *Russell*, the court found that the state agency opinions did not constitute substantial evidence because they were rendered three years prior to the ALJ's decision and were without the benefit of testimony and new evidence suggesting that Plaintiff had limitations.   742 F. Supp. 2d at 1378.   Additionally, the court noted

that the ALJ failed to articulate why the later evidence was irrelevant to the agency doctor's findings.   *Id.* at 1379.   The court concluded that the ALJ's sole reliance on the agency doctor's findings without resolving how the later evidence was consistent with these opinions was an error.   *Id.*

Although the Commissioner acknowledges that Dr. Blum did not consider evidence that post-dated his opinion, the Commissioner argues that the ALJ considered all the medical evidence, which was consistent with Dr. Blum's opinion that Plaintiff could perform a modified range of sedentary work.   Doc. 23 at 4 n.1 (citing *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 801 (11th Cir. 2013)).   Thus, the Commissioner asserts it was not error for the ALJ to assign great weight to the opinion of Dr. Blum.   Doc. 23 at 4 n.1.

The Court, finds *Russell* persuasive and *Cooper* distinguishable from this case. In *Cooper*, the Court noted that the ALJ did not give any undue weight to the opinion of the non-examining doctor; and therefore, any undue reliance was harmless.   521 F. App'x at 807.   Additionally, in that case, the record demonstrated that the ALJ did not unconditionally adopt those opinions, and the ALJ considered the entire record.   *Id.*   Here, the ALJ considered the entire record, but the ALJ also accorded great weight to the opinion of Dr. Blum without articulating how the later evidence either bolstered or contradicted Dr. Blum's 2012 findings.   Similar to *Russell*, the Court finds that it was error for the ALJ to provide great weight to the opinion of Dr. Blum without resolving how the later evidence may have impacted Dr. Blum's opinion.   The ALJ's finding also is inconsistent with the regulations and case law

requiring that the ALJ explain the weight given to state agency consultants such as Dr. Blum when, as here, the ALJ does not give the treating physician controlling weight.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta*, 194 F. App'x at 877.   Accordingly, the Court finds that the ALJ's decision to assign great weight to the opinion of Dr. Blum is not supported by substantial evidence.

### c. *Consultative Examining Psychologist, Dr. Lynn McAndrews*

Finally, Plaintiff asserts that the ALJ erroneously gave moderate weight to the opinion of consultative examining psychologist Lynn McAndrews.   Doc. 22 at 18. Plaintiff argues that the ALJ "impermissibly played doctor" when she found Plaintiff not as limited as opined by Dr. McAndrews "based on [Plaintiff's] lack of mental health treatment and her presentation at the consultative examination."   *Id.* (quoting Tr. 18).   Plaintiff states that because the ALJ was not privy to Plaintiff's actual presentation at the examination, the ALJ improperly substituted her judgment for that of a medical provider.   *Id.*   Additionally, Plaintiff states that her lack of mental health treatment is not a basis for discounting a medical opinion when Plaintiff has an inability to pay and lacks insurance.   *Id.* (citing *King v. Comm'r of Soc. Sec.*, No. 2:14-cv-341-FtM-CM, 2015 WL 5234318, at *5 (M.D. Fla. Sept. 8, 2015)).

The Commissioner responds that the ALJ properly afforded Dr. McAndrews' opinion moderate weight for the reasons explained by the ALJ in her opinion because the "record contains no evidence that Plaintiff received any mental health treatment during the relevant period."   Doc. 23 at 12 (citing Tr. 246-374).   Moreover, the Commissioner asserts that the ALJ properly discounted the weight of Dr.

McAndrews' opinion based on Plaintiff's presentation during the examination, in which Plaintiff presented with average cognitive abilities, goal directed thinking, adequate memory, adequate fund of general information, adequate calculation ability, a fair ability to interpret abstract sayings, and reasonable judgment when answering questions.   Doc. 23 at 12 (citing Tr. 18, 306-07).   The Commissioner also argues that on two occasions Plaintiff told her physicians she voluntarily stopped taking her antidepressant medication in 2010 and that her depression improved with "life changes."   Doc. 23 at 12 (citing Tr. 228, 342).

Dr. McAndrews performed a mental status examination of Plaintiff on January 7, 2013.   Tr. 304-10.   She opined:

> Based on this examination, [Plaintiff] would be able to understand both simple and complex instructions but may have difficulty carrying out instructions on a sustained basis due to depression. It is also possible that chronic pain and illness may interfere with her ability to concentrate and complete instructions. Her ability to manage a normal amount of stress is limited. Problem solving and judgment are impaired by personality features. Her ability to effectively communicate with coworkers, authority figures, and the public is adequate.

Tr. 307.   Dr. McAndrews diagnosed Plaintiff with depressive disorder, not otherwise specified, and borderline and dependent personality traits.   Tr. 308.   She also opined that Plaintiff's psychosocial stressors were severe, including chronic pain, chronic illness, and history of abuse.   *Id.*

The ALJ gave this opinion moderate weight because of the lack of mental health treatment records and Plaintiff's presentation during the examination.   Tr. 18.   The Commissioner argues that Plaintiff's contention – that the lack of mental health treatment because of inability to pay is not a basis for discounting the

psychologist's opinion – is misplaced.   Doc. 23 at 13 n.8.   When discussing Plaintiff's inability to pay, the Commissioner asserts the ALJ was not discussing Plaintiff's credibility, to which the factor of inability to pay pertains.   *Id.*   Additionally, the Commissioner argues that Plaintiff confuses the ALJ's statement about lack of treatment with noncompliance due to an inability to pay.   *Id.*

The Eleventh Circuit repeatedly has held that a claimant's inability to afford treatment excuses noncompliance with recommended courses.   In *Dawkins v. Bowen*, the court explained that when the claimant cannot afford the prescribed treatment, and there is no other way to obtain it, she is excused from noncompliance. 848 F.2d 1211, 1213 (11th Cir. 1988).   The Commissioner bears the burden of proving *unjustified* noncompliance.   *Id.*   Courts in this district previously have questioned an ALJ's reliance on the plaintiff's noncompliance with treatment or medication due to an inability to pay for same.   *See, e.g.*, *Zeigler v. Barnhart*, 310 F. Supp. 2d 1221, 1225-26 (M.D. Fla. 2004) (order adopting report and recommendation that case be reversed and remanded to the Commissioner).   Other courts within the Eleventh Circuit have relied on *Dawkins* to find that an ALJ's reliance on a claimant's failure to obtain additional testing was error warranting remand.   *See, e.g., Cronon v. Barnhart*, 244 F. Supp. 2d 1286, 1292 n.16 (N.D. Ala. 2003).

In *Cronon*, a district court in the Northern District of Alabama noted that "[t]he ALJ placed heavy emphasis on the fact that plaintiff had had no MRI or additional testing performed, but she testified that she has not had the funds for these expensive tests."   244 F. Supp. 2d at 1292 n.16.   The court continued by

discussing Eleventh Circuit's holding, first set forth in *Dawkins*, that poverty excuses noncompliance.   *Id.*; *see also Davis v. Astrue*, 478 F. Supp. 2d 1342 (N.D. Ala. 2007) (relying on *Dawkins* and noting the ALJ failed to consider the plaintiff's inability to pay for testing when citing lack of obtaining MRIs as a basis for his credibility determination).   Even where a plaintiff has demonstrated an inability to pay for additional treatment, an ALJ's failure to consider a plaintiff's finances may not be error where the objective medical evidence did not otherwise support a finding of disability, *see Belle v. Barnhart*, 129 F. App'x 558 (11th Cir. 2005), or the ALJ did not base his disability determination in large part on the plaintiff's noncompliance.   *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

Recently, the Eleventh Circuit opined that remand is appropriate when the "ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for the failure."   *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (citing *Ellison*, 355 F.3d at 1275).   In *Henry*, the ALJ discounted the weight of a consultative examining physician because of the plaintiff's limited conservative treatment.   *Id.*   The ALJ specifically cited the plaintiff's failure to seek medical treatment despite plaintiff's statement that he was unable to pay for continued medical treatment.   *Id.*   The court stated that the ALJ failed to develop the record or address the plaintiff's financial ability to pursue a more rigorous course of treatment.   *Id.*   Therefore, the court found that the ALJ failed to consider any good cause explanation for failure to seek medical treatment, and the court remanded the case for further consideration.   *Id.*

This case is directly analogous to *Henry*, and the reasoning of *Henry* and the other cases discussed is applicable.   Here, the ALJ discounted the weight of Dr. McAndrews, in part, based on Plaintiff's lack of mental health treatment.   Tr. 18. There is evidence in the record indicating that Plaintiff had no insurance or money to pay for extensive treatment.   *See* Tr. 247.   Despite evidence in the record indicating that Plaintiff's lack of treatment was due to Plaintiff's inability to pay, the ALJ reduced the weight accorded to Dr. McAndrews.   The Court notes that the record evidence concerning Plaintiff's inability to pay was related to Plaintiff's medical treatment for her physical impairments.   Tr. 247.   The ALJ, however, did not consider whether Plaintiff's lack of mental health treatment also was due to Plaintiff's inability to pay.   The Court finds this was in error because, as in *Henry*, the ALJ failed to consider any good cause explanation for failure to seek medical treatment.   Just as courts have excused noncompliance with prescribed treatment based on inability to pay, see *Dawson*, 848 F.2d at 1213, so too should inability to pay excuse Plaintiff's lack of mental health treatment records in this case.

Plaintiff also argues that the ALJ impermissibly substituted her opinion for that of Dr. McAndrews, the latter of whom met with and evaluated Plaintiff.   Doc. 22 at 18.   Without elaboration or explanation, the ALJ reduced the weight assigned to Dr. McAndrews' opinion also because of Plaintiff's "presentation" during the examination.   Tr. 18.   The Commissioner notes that during the examination, "Plaintiff presented with average cognitive abilities, goal directed thinking, adequate memory, adequate fund of general information, adequate calculation ability, a fair

ability to interpret abstract sayings, and reasonable judgment when answering questions." Doc. 23 at 12 (citing Tr. 18, 306-307). While this is an accurate statement of the record, it is not at all clear that the ALJ was referring to this information when she reduced the weight of Dr. McAndrew's opinion because of "[Plaintiff's] presentation at the consultative examination." Tr. 18. This is because the ALJ does not explain or elaborate at all the basis for this finding. *See id.* Without more, the Court cannot conclude whether the ALJ substituted her opinion for that of Dr. McAndrews when she reduced Dr. McAndrew's opinion based on Plaintiff's "presentation," as Plaintiff asserts. Doc. 22 at 18 (citing *Marbury v. Sullivan*, 947 F.2d 837, 841 (11th Cir. 1992)). Accordingly, the Court finds that the ALJ's RFC finding is not supported by substantial evidence.

### 2. *ALJ's Finding of Moderate Limitations in Concentration, Persistence, and Pace*

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to account for moderate limitations in concentration, persistence or pace when she limited Plaintiff to "simple" work. Doc. 22 at 19. Specifically, Plaintiff states that the ALJ's finding that Plaintiff "is limited to performing simple, routine, and repetitive tasks" does not adequately provide for moderate limitations in concentration, persistence or pace. *Id.* at 20. The Commissioner responds that the ALJ's RFC finding and the hypothetical she posed to the VE at step five adequately accounted for Plaintiff's moderate limitation in concentration, persistence and pace because the medical records and other evidence support the ALJ's finding. Doc. 23 at 14.

Restricting a hypothetical question to simple, routine tasks or unskilled work does not account for a claimant's limitations in concentration, persistence or pace unless the evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, or pace. *Winschel* 631 F.3d at 1180 (internal citations omitted); *see also Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959, 960-61 (11th Cir. 2010) (stating "where medical evidence demonstrates that a claimant retains the ability to engage in simple, routine, repetitive tasks or unskilled work despite deficiencies in concentration, persistence, and pace, our sister circuits have found these restrictions sufficiently account for such deficiencies.").

Here, although the ALJ found that Plaintiff can perform simple, repetitive tasks, despite finding moderate limitations in concentration, persistence or pace, the ALJ failed to adequately consider the opinions of Dr. Linguar, who opined that Plaintiff would be off-task twenty-five percent of the time or more.   Thus, the Court cannot find that the ALJ's limitation of Plaintiff to simple, repetitive tasks is supported by substantial evidence because the Court is unable to determine whether the ALJ accorded the appropriate weight to Dr. Linguar's opinions.   The ALJ references records from Dr. Joe DeLoach, a state agency reviewing psychologist, who opined that Plaintiff retains the capacity to perform simple and repetitive tasks, and Dr. McAndrews, who opined that Plaintiff is able to understand both simple and complex instruction.   Tr. 17-18.   Without a clear indication from the ALJ, however, as to what she considered in determining the weight she assigned to Dr. Linguar's

opinion, the Court cannot adequately assess whether the ALJ's limitation to simple, repetitive tasks is supported by substantial evidence. Because this case must be remanded for the ALJ to reevaluate and clearly articulate the weight given to Dr. Linguar, the Court also will direct the ALJ to state with specificity whether based on her review of the evidence, Plaintiff is able to perform simple, repetitive tasks despite a finding of moderate limitations in concentration, persistence or pace.

### B. Whether the ALJ properly analyzed Plaintiff's credibility

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Wilson*, 284 F.3d at 1225-26. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Plaintiff argues that the ALJ failed to explain why Plaintiff's subjective complaints were not entirely credible.   Doc. 22 at 22.   Plaintiff alleges that the ALJ simply made a broad rejection of Plaintiff's testimony when she stated that Plaintiff's subjective complaints "are not entirely credible for the reasons explained in this decision."   *Id.*, Tr. 15.   According to Plaintiff this was in error because nowhere else in the opinion does the ALJ address Plaintiff's credibility, and thus, the ALJ's opinion is insufficient for the reviewing Court to determine that the ALJ considered her condition as a whole.   *Id.* (citing *Foote*, 67 F.3d at 1561).   The Commissioner argues that Plaintiff's assertion is false because the ALJ provided specific reasons for finding Plaintiff's complaints not entire credible.   Doc. 23 at 18.

Although the ALJ inserted the boilerplate language into her opinion when she stated that Plaintiff's complaints were "not entirely credible for reasons explained in this decision[,]" she also clearly articulated specific reasons for finding Plaintiff's subjective complaints not entirely credible.   Tr. 15, 17.   The ALJ stated,

> I used the factors considered under SSR 96-7p in determining the credibility of the [Plaintiff's] allegations. The [Plaintiff] exercises regularly, up to seven times per week. (3F, p.2) She reported that with chiropractic treatment her back, neck, and indigestion improved to the point where she was able to take a vacation without fear of being away from the bathroom for an hour. (4F, p.1). As of April 15, 2013, the [Plaintiff] had not had any stool studies. (14F, p.1). The [Plaintiff] takes Lyrica for her fibromyalgia, which causes dizziness and confusion. (8F, p.2). These findings are not consistent with her complaints of disabling pain, but rather tend to support the limitations in the residual functional capacity of sedentary exertional work with the limitations as indicated.

Tr. 17.   The Court finds that the ALJ provided considerably more than a boilerplate rejection of Plaintiff's subjective complaints and clearly articulated the basis for her

rejection.   Because, however, the Court finds that remand is appropriate for other reasons, the Court will direct the ALJ to also reconsider Plaintiff's credibility.

   C. *Whether the step five determination is supported by substantial evidence.*

Plaintiff argues that ALJ erred in relying upon VE testimony because the testimony was in response to an incomplete hypothetical question.   Doc. 22 at 24. Moreover, Plaintiff contends that the ALJ's errors in determining Plaintiff's RFC and credibility render the step five finding unsupported by substantial evidence because the RFC does not reflect the most Plaintiff can do despite her limitations.   *Id.*   The Commissioner responds that the hypothetical included all of Plaintiff's functional limitations and thus, the ALJ properly relied upon the VE testimony at step five. Doc. 23 at 19.

"[I]n order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the vocational expert which comprises all of the claimant's impairments."   *Phillips*, 357 F.3d at 1240 n.7 (quotation marks omitted).   "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted).   While an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson*, 284 F.3d at 1227, the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record.   *Crawford*, 363 F.3d at 1161.

Here, because the Court concludes that the RFC is not supported by substantial evidence, the ALJ's findings at step five also are unsupported by

substantial evidence.   Accordingly, once the ALJ makes a new RFC finding, the ALJ must present a new hypothetical to the VE that includes all of Plaintiff's limitations.

### D. Conclusion

Upon review of the record, the undersigned concludes that the ALJ's RFC finding is not supported by substantial evidence.

ACCORDINGLY, it is hereby

**RECOMMENDED:**

1.     The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> a.  sufficiently explain the weight accorded to each of the medical providers and non-examining consultants;
>
> b.  reevaluate Plaintiff's credibility;
>
> c.  pose a new hypothetical to a VE consistent with the RFC findings; and
>
> d.  make any further determinations consistent with this Report and Recommendation, or in the interest of justice.

2.     The Clerk of Court be directed to enter judgment accordingly, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 2nd day of August, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies: Counsel of record

- 34 -